UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GINA FEISTEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Case No. _____ |
| NATIONAL COLLEGIATE | § | |
| ATHLETIC ASSOCIATION and | § | |
| INTERCOLLEGIATE TENNIS | § | |
| ASSOCIATION, | § | |
| | § | |
| Defendants | § | |

**COMPLAINT FOR DECLARATORY JUDGMENT,
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
PERMANENT INJUNCTION, AND OTHER RELIEF
(JURY TRIAL DEMANDED)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now comes Plaintiff Gina Feistel to file this Complaint for Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and Other Relief (Jury Trial Demanded) against Defendants National Collegiate Athletic Association (NCAA), Intercollegiate Tennis Association (ITA) and would show the Court as follows

**I. INTRODUCTION**

1.      This emergency action seeks to enjoin the NCAA and ITA from enforcing an obsolete tennis-specific eligibility rule that has wrongfully declared Plaintiff ineligible for the ongoing Spring 2026 NCAA Division I women's tennis season as a member of the Southern Methodist University (SMU) women's tennis team. The rule – NCAA Division I Bylaw 12.6.3.2.2.4 (the "20-year rule"

or "delayed-enrollment rule") – penalizes tennis players for participating in organized competition after their 20th birthday before full-time enrollment at their certifying Division I institution.

2.      Plaintiff's post-20th birthday activities were expressly directed by the Polish National Tennis Governing Body for Olympic Team qualification purposes. These activities fall squarely within the Bylaw's exemptions for junior-national-team and junior-level-equivalent events. Nevertheless, the NCAA has applied the rule arbitrarily, causing immediate and irreparable harm during Plaintiff's finite collegiate eligibility window, which expires in Fall 2026.

3.      The 20-year rule is a horizontal agreement among NCAA member institutions that unreasonably restrains trade in the national market for Division I women's tennis athletic services. Enacted about fifteen years ago, the legislation was intended solely to protect amateur status. But he rule has een rendered obsolete and unenforceable by *NCAA v. Alston*, 594 U.S. 69 (2021), the *House v. NCAA* revenue-sharing settlement (effective July 1, 2025), and the *Brantmeier v. NCAA* class-action settlement (February 2026). Plaintiff seeks a temporary restraining order, preliminary and permanent injunctive relief, and declaratory judgment to restore and/or preserve her eligibility for the remainder of the Spring 2026 season.

## II. PARTIES AND PERSONAL JURISDICTION

4.      Plaintiff Gina Feistel is an individual and student-athlete competing for SMU in women's tennis. She resides in and competes in Dallas County, Texas.

5.      Defendant National Collegiate Athletic Association is a foreign not-for-profit corporation with its principal place of business in Indianapolis, Indiana. It governs intercollegiate athletics, including eligibility determinations for SMU and other member institutions, and does substantial business in the State of Texas and in this District.

6.      Defendant Intercollegiate Tennis Association is a foreign not-for-profit corporation

with its principal place of business in Tempe, Arizona. It administers dual-match results, rankings, and eligibility enforcement for NCAA tennis programs, including those involving SMU, and does substantial business in the State of Texas and in this District.

### III. SUBJECT MATTER JURISDICTION AND VENUE

7.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction over the Sherman Act claim) and 28 U.S.C. § 1367 (supplemental jurisdiction over the state-law claims).

8.    Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Dallas County, which is located in this District. SMU's campus and compliance office are located in Dallas County; Plaintiff competed and will compete in affected matches in Dallas County; the NCAA's ineligibility determination directly impacts Plaintiff's participation in competitions and related economic opportunities in Dallas County; and the ITA's actions concerning match results and rankings have effects in Dallas County.

### IV. FACTS

9.    Plaintiff signed a National Letter of Intent and received a full grant-in-aid scholarship with Belmont University for the 2021-2022 academic year. Visa and I-20 delays prevented her enrollment for Fall 2021. She enrolled at Belmont for Spring 2022, completed 16 credits with a 3.75 GPA, and remained in good academic standing.

10.    Plaintiff later transferred to SMU.

11.    Plaintiff turned 20 years old on January 25, 2023.

12.    Prior to Plaintiff's full-time enrollment at SMU, and at the express direction of the

Polish National Tennis Governing Body (the Polish Tennis Association), Plaintiff participated in organized tennis competition to accumulate ranking points necessary for Olympic Team selection. These activities included winning the Polish U23 Championships (June 12–17, 2023), membership and sanctioned activities with the Polish Tennis Association Senior National Team A, and participation in ITF and WTA events directed toward ranking-based Olympic qualification. The Polish Tennis Association certified Plaintiff's achievements and national-team status.

13.    Due to Plaintiff's competition and travel schedule, Plaintiff was approved for an Individual Organization of Studies at AWFiS Gdańsk.

14.    In Fall 2025, Plaintiff completed coursework at community colleges (Colby Community College and Garden City Community College) as a non-degree-seeking visiting student. Her transcripts were forwarded to SMU.

15.    After transferring to SMU, on January 31, 2026, Plaintiff competed at the No. 1 singles position for SMU against the University of Arizona. The University of Arizona appealed to the NCAA, and the NCAA subsequently determined that Plaintiff was ineligible under Bylaw 12.6.3.2.2.4.

16.    SMU opened a Division I Legislative Relief Waiver matter (Case ID 1262492) and submitted a detailed appeal arguing that Plaintiff's national-team-directed, Olympic-pathway activities fall within the Bylaw's express exemptions and warrant non-application or waiver of the rule.

17.    On February 1, 2026 Planitiff cometed at the No. 1 singles position for SMU against Baylor University. Baylor University appealed to the ITA, and the ITA concurred with the NCAA's ineligibility determination.

18.    Plaintiff remains within her five-year NCAA eligibility clock under Bylaw 12.8,

which expires in Fall 2026. The Spring 2026 dual-match season is currently ongoing. Each missed match, practice, or competition opportunity causes Plaintiff irreparable harm that cannot be remedied by monetary damages. Plaintiff's earnings as a collegiate athlete are determined in part by her end-of-season ranking, and each missed, annulled, or reversed match impacts those earnings.

19.     The NCAA Division I Manual (2025-26 edition) contains Bylaw 12.6.3.2.2.4 and Figure 12-2, which govern delayed-enrollment penalties. The Bylaw exempts certain activities, including participation in elite international competitions and junior-national-team or junior-level-equivalent events. Plaintiff's activities qualify for these exemptions.

## V. CAUSES OF ACTION

**COUNT I: Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Unreasonable Restraint of Trade – Rule of Reason)**

20.     The NCAA's tennis-specific 20-Year Rule (Bylaw 12.6.3.2.2.4 and associated provisions in Figure 12-2) constitutes a horizontal agreement among NCAA member institutions that unreasonably restrains trade in the relevant market: the national market for the athletic services and labor of Division I women's tennis players, particularly international athletes pursuing Olympic-qualification pathways.

21.     The agreement has substantial anticompetitive effects. It artificially reduces the supply and quality of elite tennis talent available to Division I programs, forecloses athletes like Plaintiff from full economic participation in the college tennis labor market (including NIL compensation, revenue-sharing payments authorized by the *House v. NCAA* settlement, and professional-earnings opportunities tied to collegiate eligibility), and arbitrarily discriminates against tennis players. Unlike other sports, tennis uniquely requires early professional and national-team competition in order to accumulate ranking points for Olympic selection.

22.    The 20-Tear Rule was developed in 2009–2011 legislation (Proposal 2009-22) for the sole purpose of protecting amateur status in an era when tennis players often turned professional at a young age. That justification no longer exists. The Supreme Court in *NCAA v. Alston*, 594 U.S. 69 (2021), rejected the NCAA's broad amateurism defense and subjected its eligibility and compensation rules to full antitrust scrutiny under the rule of reason. The *House v. NCAA* settlement, approved in 2025 and effective July 1, 2025, authorizes direct revenue sharing with athletes (up to approximately 22% of athletics revenue per school, often exceeding $20 million annually). The *Brantmeier v. NCAA* class action (M.D.N.C., 2024–2026), brought by UNC tennis star Reese Brantmeier and others, directly challenged tennis-specific prize-money caps and related eligibility rules under Section 1 of the Sherman Act; the parties reached agreement on material terms of a class settlement in February 2026.

23.    No legitimate pro-competitive justification remains for the 20-Year Rule. Less restrictive alternatives plainly exist, including the 12-month grace period applied to athletes in every other NCAA sport and individualized waivers for national-governing-body-directed Olympic preparation. Plaintiff has suffered direct injury to her business or property as a result of the rule's enforcement.

**COUNT II: Declaratory Judgment – 28 U.S.C. § 2201**

24.    An actual and justiciable controversy exists between Plaintiff and Defendants concerning the proper application and enforceability of Bylaw 12.6.3.2.2.4 to Plaintiff's circumstances. Plaintiff seeks a declaration that the Bylaw does not apply to bar her eligibility for the Spring 2026 season, that her activities fall within the Bylaw's exemptions, and/or that waiver or relief is required.

**COUNT III: Injunctive Relief (Temporary, Preliminary, and Permanent)**

25.    Plaintiff is likely to succeed on the merits, will suffer imminent and irreparable injury absent injunctive relief, has no adequate remedy at law, the balance of equities tips sharply in her favor, and the public interest supports issuance of an injunction. Plaintiff therefore seeks: (1) a temporary restraining order (ex parte or with minimal notice as permitted by Rule 65); (2) a temporary injunction; and (3) a permanent injunction: restraining National Collegiate Athletic Association (NCAA), Intercollegiate Tennis Association (ITA), their officers, agents, servants, employees, and attorneys, and other all persons acting under the direction or control of or in concert with either of them from enforcing NCAA Division I Bylaw 12.6.3.2.2.4 against Plaintiff Gina Feistel for the remainder of the Spring 2026 tennis season;

**COUNT IV: Breach of Association Rules / Arbitrary and Capricious Enforcement**

26.    The NCAA, as a private voluntary association, must apply its rules in a fair, reasonable, and non-arbitrary manner. Its enforcement of Bylaw 12.6.3.2.2.4 against Plaintiff – despite the Bylaw's exemptions, SMU's pending waiver request, and the national-federation-directed nature of her Olympic-pathway activities – is arbitrary, capricious, and inequitable.

**COUNT V: Promissory and Equitable Estoppel**

27.    The NCAA's legislative-relief waiver processes created a reasonable expectation that Plaintiff's circumstances would receive equitable consideration. Plaintiff and SMU reasonably relied on these processes to their detriment.

**COUNT VI: Tortious Interference with Prospective Economic Relations (Against ITA)**

28.    The ITA's agreement with the NCAA's ineligibility determination and its actions concerning affected match results and rankings tortiously interfere with Plaintiff's prospective

economic relations, including rankings, seeding, scholarship benefits, NIL opportunities, and postseason participation.

## VI. JURY DEMAND

29.    Plaintiff demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

(A)    issue an immediate ex parte temporary restraining order (or with minimal notice as permitted by Rule 65) restraining National Collegiate Athletic Association (NCAA), Intercollegiate Tennis Association (ITA), their officers, agents, servants, employees, and attorneys, and other all persons acting under the direction or control of or in concert with either of them from enforcing NCAA Division I Bylaw 12.6.3.2.2.4 against Plaintiff Gina Feistel for the remainder of the Spring 2026 tennis season;

(B)    holding an expedited hearing on the application for preliminary injunction within fourteen (14) days and issuing a temporary injunction likewise restraining National Collegiate Athletic Association (NCAA), Intercollegiate Tennis Association (ITA), their officers, agents, servants, employees, and attorneys, and other all persons acting under the direction or control of or in concert with either of them from enforcing NCAA Division I Bylaw 12.6.3.2.2.4 against Plaintiff Gina Feistel for the remainder of the Spring 2026 tennis season

(C)    issue a permanent injunction likewise restraining National Collegiate Athletic Association (NCAA), Intercollegiate Tennis Association (ITA), their officers, agents, servants, employees, and attorneys, and other all persons acting under the direction or control of or in concert with either of them from enforcing NCAA Division I Bylaw 12.6.3.2.2.4 against Plaintiff Gina Feistel for the remainder of the Spring 2026 tennis season

(D)    order Defendants to immediately recognize Plaintiff's eligibility to practice and compete with the SMU women's tennis team;

(E)    order the ITA to make appropriate corrections or adjustments to affected match results and rankings;

(F)    enter declaratory judgment as requested;

(G)    award Plaintiff her reasonable and necessary attorney's fees and costs of court pursuant to applicable law; and

(H)    grant such other relief to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

/s/ Kurt S. Elieson
Kurt S. Elieson
Texas Bar No. 06521100
Kurt@EliesonLaw.com
2340 E. Trinity Mills Road, Suite 300
Carrollton, Texas 75006
940-300-3801

Jon Velie
Texas Bar No. 24118660
Jon@velielaw.com
**Velie Global Law Firm**
555 Republic Drive, Suite 505
Plano, Texas 75074
469-606-9555

Attorneys for Plaintiff Gina Feistel